## No. 6825.

### M. L. BYRNE & CO. VS. L. H. GARDNER & CO.

On the dissolution of an Attachment issued on the ground that the debtor was about to dispose of his property with intent to defraud his creditors, when the attaching creditor acted without malice and solely under the legal advice of an experienced attorney, the Defendant shall recover the damages actually sustained and no more.

Damages actually sustained, comprise not only pecuniary loss and actual expenses incurred, such as costs and counsel fees, but also the mortification, annoyance and vexation caused to the Defendant by the Attachment.

APPEAL from the Fourth District Court, parish of Orleans. *Houston, J.*

*Albert Voorhies* for Plaintiffs and Appellees.

*Kennard, Howe & Prentiss* for Defendants and Appellants.

When defendants attached the property of plaintiffs, on a just claim, and the attachment was set aside, and the seizure is shown to have been merely nominal, and no damages are proved to have been suffered by defendants, and plaintiffs acted without malice and with probable cause, no damages can be recovered.

In no event can vindictive or exemplary damages be recovered, when defendants acted without malice and with probable cause. The measure of damages in such a case is the amount of the actual loss proved to have been the direct and proximate result of the attachment.

The action for alleged damages beyond the amount of the attachment bond, arises *ex delicto.* and is barred by the prescription of one year.

When a party claims less than the amount due to him, he shall lose the overplus.

The judgment of a court should be based upon the verdict of the jury, and when the jury allows no interest, none should be allowed in the judgment.

The law does not authorize interest from judicial demand on an amount awarded as damages in a suit on an attachment bond.

The opinion of the Court was delivered by

TODD, J. On the 9th of January, 1872, the defendants instituted suit against the plaintiffs, accompanied by an attachment, taken out on the ground that the debtors were about to dispose of their property with intent to defraud their creditors, as provided by statute of 1868, amendatory of the articles of the Code of Practice on the subject of attachment,

Judgment was rendered in favor of the defendants for the debt sued on, but the attachment was dissolved as having illegally issued.

Thereupon the defendants in that case and plaintiffs in this, brought suit against L. H. Gardner & Co., the defendants herein, and Albert Baldwin, their surety on the attachment, for damages, alleged to have been caused by the attachment.

The damages claimed against L. H. Gardner & Co. are ten thous-

and dollars, and against the surety four thousand dollars, the amount of the attachment bond.

It was alleged in substance that the plaintiffs were doing business in the City of New Orleans as dry goods merchants ; that they enjoyed the public confidence, wherever they were known, as honorable and punctual business men ; that their store and goods were seized under the said writ, and possession of the same held for two weeks by a keeper appointed by the sheriff. It was further alleged " that said proceedings by attachment were illegal, arbitrary, unjust, intended and calculated to harass, annoy and injure petitioners ;" and that they were entitled to the damages claimed for the expenses incurred by them on account of the proceedings, and for " the moral and pecuniary injury sustained by them."

The defendants pleaded the general issue, and specially denied that they took out the attachment proceedings " with the intention to harass, annoy and injure the plaintiffs."

The case was tried before a jury, who returned a verdict against the defendants for two thousand dollars, and from the judgment rendered thereon they have appealed.

The correctness of the judgment dissolving the attachment is not before us for review. It is *res judicata*.

We are to inquire, therefore :

1st. Whether the proceeding was resorted to maliciously, with the intent to annoy and injure the defendants.

2d. If any damages were sustained by plaintiffs; and, if so, the nature and extent of the same.

First. We have carefully examined the evidence in the record, and are satisfied that the charge that defendants, L. H. Gardner & Co., instituted the proceeding maliciously or wantonly, to harass, annoy and injure the plaintiffs, is not sustained. The claim sued on was a just one, as shown by the judgment rendered for the debt. It must be taken into consideration, too, that at the time the suit was instituted the grounds of attachment proceeded on were comparatively new, being those added by a then recent statute, upon which there had been no authoritative construction by this Court. Added to this, it is shown that the plaintiffs proceeded on the advice of an experienced attorney, and acted solely on his judgment. In the execution of the writ, care seemed to have been taken to relieve it of all unnecessary harshness and inconvenience to the debtor. The store was permitted to remain open, and the defendants in the writ to continue their usual business. In other words, the seizure, beyond the presence of the keeper in the establishment, was nominal. These circumstances rebut the charges of malice

in the proceeding, and the intent to harass and injure the plaintiffs thereby.

Second. The attachment issued illegally, and the plaintiffs were damaged thereby. What damages are they entitled to recover? In the case of Moore vs. Withenburg, 13 A. 22, which was a suit on an attachment bond, this Court said:

"The rule which governs in this kind of action is, that plaintiff shall recover the damages actually sustained, and no more, unless in a case utterly *unfounded* and *malicious.*"

And in the case of Carter vs. Tufts, 15 A. 16, it was said:

"It appears to be now settled that damages will not be allowed, in Louisiana, against a party for asserting a right by the compulsory processes allowed by our laws, beyond the damages actually sustained, unless the circumstances of the case disclose a want of probable cause for action instituted by such party, and malice in the resort to compulsory process."

But what is meant by the the term "damages actually sustained?" We find much uncertainty in the elementary works and decisions of the Court on this subject. Must actual damages be confined strictly to an absolute pecuniary loss?

Blackstone defines damages as the money "given to a man by a jury as compensation, in satisfaction for some injury sustained. 2 Bl. Com. 438.

Sedgwick, in his work on "Damages," p. 35 says:

"Injury resulting from the acts or omissions of others, *free from any taint of fraud, malice, or willful wrong,* consists:

"1st. Of the *actual pecuniary loss* sustained.

"2d. Of the *indirect pecuniary loss* sustained in consequence of the primary loss; profits that might have been made;   *   *   loss of credit; loss of business, etc.

"3d. *Mental suffering,* produced by the act or omission in question; vexation, anxiety.

"4th. The *value of time* consumed in establishing the contested right.

"5th. *Actual expenses* incurred;   *   *   costs and counsel fees."

Another eminent writer on the same subject (Greenleaf) has said:

"The plaintiff would not be confined to the proof of actual pecuniary loss; for it has been always held that the jury might take into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property, but in his person, his peace of mind, his quiet and sense of security in the enjoyment of his rights; in short, his happiness." Appendix to Sedgwick, p. 609.

This doctrine closely conforms in its spirit to the declaration of our Code, which declares that "every act whatever of man that causes damage to another, obliges him, by whose fault it happened, to repair it." C. C. 2315.

Measuring the damages to plaintiffs, caused by the attachment in question, by the rules laid down in the authorities cited, they would be entitled to recover the expenses they incurred, or for which they are liable in effecting the dissolution of the writ, such as counsel fees. In this regard, the entire record of the suit, in which the attachment issued, is before us, showing the amount involved, the proceedings under the writ, and the services rendered in procuring its dissolution, thus enabling us to estimate the value of such services.

Though, as we have stated, the execution of the writ was not characterized by that harshness and disregard of the interests of the plaintiffs as if prompted by malice, yet it was executed and illegally executed, and the mode of its execution, though of the mildest kind, was sufficient to have caused great mortification, annoyance and vexation to the plaintiffs, such as the enforced presence of the sheriff's keeper, for two weeks, in their business establishment, serving as a constant reminder of their being under legal restraint and surveillance, unwarranted though it was. These were proper subjects for the consideration of the jury in estimating the damages.

We fail to discover in the testimony that the credit of the plaintiffs suffered by the attachment proceeding *per se;* that is, that this proceeding of itself inflicted additional injury to the credit of the plaintiffs, to that the suit, apart from the attachment, was calculated to do. The defendants had a perfect right to bring the suit. Their debt was due, and payment of it had been refused; and in thus suing, they but exercised a legal right. If there was any direct and immediate injury to plaintiffs' credit, caused by the entire proceeding, which the evidence leaves in some doubt, it grew out of the suit, and not from the attachment alone.

It would equally have resulted from the protest of plaintiffs' note, which defendants could have had protested, but which, at the request of the plaintiffs, they refrained from doing. Nor was any loss to their business proved as resulting simply from the attachment.

The jury allowed two thousand dollars damages. We think the amount excessive; and from a full and thorough consideration of the case, and the peculiar circumstances connected with it, as shown by the record, upon which our action is distinctly based, we feel constrained to reduce the amount allowed to seven hundred and fifty dollars, which, we think, would be a fair compensation for the damages sustained.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount of the same to

10          SUPREME COURT OF LOUISIANA,

seven hundred and fifty dollars, with legal interest from the 29th of April, 1875, to be recovered of the defendants *in solido ;* the costs of the lower court to be paid by the defendants, and of this appeal by the plaintiffs.

Chief Justice Bermudez having been of counsel in the case of L. H. Gardner & Co. vs. M. L. Byrne & Co., in which the attachment issued, recuses himself.

Levy, J., absent.