No. 3514

Second Circuit

————

CHATMAN v. WREN & TURNER, INC., ET AL.

————

(July 1, 1929. Opinion and Decree.)

————

R. F. Langston, of Minden, attorney for plaintiff, appellee.

A. S. Drew, of Minden, attorney for defendants, appellants.

ODOM, J. Plaintiff brings this suit against defendants for damages for wrongful seizure of his property and for the value or proceeds thereof. We find in the record the written opinion of Hon. Coleman Lindsey, Judge ad hoc, who tried the case. He has correctly stated the issues involved, the testimony and the law applicable. We can state them no better than he has done, and we therefore copy his opinion in full, and make it our own:

## OPINION OF JUDGE LINDSEY.

"This case has already been before the Court on an exception of misjoinder, and some of the facts set out in the written opinion on that exception need not be repeated here.

"Plaintiff claims damages in the sum of $1635.44, itemized as follows:

| | |
|---|---:|
| Value of cotton seized and sold | $870.19 |
| Value of cotton seed seized and sold | 105.00 |
| Loss of time in attending Court in the intervention proceedings in No. 4200 | 50.00 |
| Attorney's fee in intervention in No. 4200 | 150.00 |
| Attorney's fee in these proceedings | 150.00 |
| Exemplary damages | 250.00 |
| Court costs in No. 4200 | 60.25 |

"The last item was abandoned by plaintiff during the trial for the reason that he already has judgment for this item.

"During the trial of the case defendant made a tender to plaintiff of some $412.00, which tender plaintiff refused.

"That plaintiff is entitled to recover for the cotton seized by defendant and bought in at Sheriff's sale by it, defendant does not deny. The dispute is over the amount of cotton so seized and sold and its value. Defendant denies liability on the other items.

"It at first appeared that there is a hopeless conflict in the testimony as to the amount of cotton seized, especially with reference to a so-called 'lost bale,' but, after a careful examination of the testimony, the Court has arrived at what it believes to be the true facts in this connection.

"Mr. A. D. Turner, an officer of defendant corporation, gives the compress weights

and grades of five bales of cotton seized. His testimony on these points is not contradicted. He further testifies that this represents all the cotton seized on plaintiff's farm. The pertinent facts with reference to these five bales seem to be as follows:

"(1) Bale ginned by plaintiff at Bonner's gin and left at his place shortly after the seizure, alleged to weigh 525 pounds. Mr. Turner admits receiving this bale and gives the grade as middling and the compress weight as 513 lbs.

"(This is the so-called 'lost bale').

"(2) Bale on wagon at Miller's gin at time of seizure, which plaintiff testified weighed 1325 lbs. Mr. Turner admits receiving this bale and gives the grade as middling and compress weight as 469 lbs.

"(3) Bale on wagon at Miller's gin at time of seizure, which plaintiff testifies weighed 1610 lbs. Mr. Turner admits receiving this bale and gives the grade as strict low middling and the compress weight as 595 lbs.

"(4) Cotton in cotton houses and crib, picked by plaintiff, both before and after seizure, weighing 1474 lbs. Mr. Turner admits receiving and ginning this cotton, and gives the grade as low middling and the compress weight as 583 lbs.

"(5) Cotton picked by defendant after sale. Mr. Turner testifies this amounted to 1603 lbs. Plaintiff's witnesses testify that it amounted to 1846 lbs. Mr. Turner admits receiving and ginning this cotton, and gives the grade as strict good ordinary and the compress weight as 596 lbs.

"The difference with reference to the first bale is very slight, and may be due either to shrinkage or to a difference in the gin scales and the compress scales.

"The difference in the second bale is greater. Taking the testimony of Mr. E. E. Miller, 1325 lbs. of seed cotton should give a bale weighing approximately 550 lbs. The same is true of the third bale, which, according to Mr. Miller's testimony, should weigh approximately 670 lbs. But

it is possible that the gin scales are not accurate, and, since the Court is convinced that the two bales mentioned came from the two loads of seed cotton at Miller's gin, it is inclined to accept the positive and uncontradicted testimony of Mr. Turner as to the weights.

"The difference with reference to the fourth bale is very slight. Accepting Mr. Miller's basis for calculation this bale should weigh 614 lbs. This difference may be due to shrinkage or inaccuracy of the gin scales or the scales used at plaintiff's cotton house.

"There is considerable conflict with reference to the fifth bale. Accepting defendant's testimony as true, this bale should weigh some 668 lbs. According to plaintiff's figures, that there was 1846 lbs. of this cotton, it should have produced some 770 lbs. of lint. However, it must be borne in mind that this cotton was the last picked, and all the witnesses say that at least some of it was filled with sand and burs. This, with the reasons mentioned in connection with the other four bales, may account for the discrepancy.

"Accepting plaintiff's contentions as correct, taking the weights as given by him, allowing nothing for shrinkage or inaccuracy of the gin scales and field scales, and allowing nothing for the sand and burs in the last cotton picked, would leave only 375 lbs. of lint cotton not accounted for. It is to be noted further that all these figures are based on Mr. Miller's statement that he figures 1200 lbs. of half and half seed cotton will produce a 500-lb. bale. He states that this is only an estimate and will vary more or less.

"The Court is satisfied that the five bales of cotton mentioned, aggregating 2756 lbs., is all the cotton seized by defendant which was the property of plaintiff.

"This cotton was bought by defendant at Sheriff's sale as seed cotton at 6.3 cents, it being estimated at 6553 lbs. Defendant contends that this is the value of the cotton and that plaintiff should not recover more than the sale price. The Court is of

the opinion that plaintiff should recover what he would have received for his cotton if defendant had not seized it. On September 10th and 11th, 1925, the dates of the two seizures, plaintiff had picked four bales of the six bales raised on his place, one bale having been ginned and sold before the seizure. It is reasonable to assume that plaintiff could have picked and sold all of his cotton not later than October 15th, if he had not been molested. The first two bales graded strict low middling, and, if plaintiff had been allowed to continue his harvest undisturbed by a seizure, the Court is of the opinion that the entire crop would have been harvested before the rainy season began, and that the remaining two bales would have graded not lower than strict low middling, making a total of 1174 lbs., grading strict low middling.

"Mr. A. H. Ferguson, a cotton buyer and a disinterested witness, testified that on September 11, 1925, middling cotton was worth 22 cents in Minden, and on October 15th was worth 19-5/8 cents. The average for this period is 20-13/16 for middling. He further testified that strict low middling was worth about 1 cent less than middling, or 19-13/16 cents.

"On this basis plaintiff is entitled to recover on this item as follows:

982 lbs. Middling cotton at 20-13/16 cents ........................................................$204.38
1774 lbs. strict low middling at 19-13/16 cents ........................... 351.47

Total.................................... $555.85

"This Court is not inclined to allow any recovery for the cotton seed. There is testimony in the record to show that the seed from a bale of cotton is generally no more than sufficient to pay for the hauling, ginning and wrapping of the cotton, and it is so considered herein. This is based on the commercial value of the seed. It appears that seed suitable for planting is worth about twice as much as seed used for commercial purposes, but this value is somewhat speculative, and, in a suit of this nature, the commercial value appears to the Court to be the proper value to apply.

"Plaintiff's claim of $50.00 for loss of time in attending Court is not established to the Court's satisfaction, and his damage in this connection could, at best, be but very little.

"The last item of $150.00 for attorney's fees in connection with plaintiff's intervention in suit No. 4200 will be allowed. The case of Frank & Company v. John Chaffe & Sons, 34 La. Ann. 1203, is authority for allowing this fee, and, considering the services rendered by plaintiff's attorney, the amount claimed appears very reasonable.

"The last item of $250.00 for exemplary damages is rejected. The Court is not of the opinion that defendant was prompted by any malice in seizing the property in question, but honestly believed such action was necessary for the protection of its rights.

"The item of $150.00 for attorney's fees in these proceedings is also rejected, no authority being cited that would justify a recovery thereunder.

"Plaintiff prays for interest at the legal rate from September 21, 1926, and the Court is of the opinion he is entitled to recover this interest.

"The defendant Sheriff filed no answer, but it was agreed in open Court by counsel for plaintiff and counsel for defendant corporation, who is also the attorney of record for the defendant Sheriff, that the answer of defendant corporation shall stand as the answer of defendant Sheriff, and that whatever judgment may be rendered against the defendant corporation, shall also be rendered against the defendant Sheriff. As authority for holding the Sheriff as well as the seizing creditor liable, see the case of Tregre & Schexnayder v. Carter Packet Company, 132 La. 298, 61 So. 379, 45 L. R. A. (N. S.) 189.

"For the reasons assigned, it is ordered, adjudged and decreed that there be judg-

ment in favor of the plaintiff, Porter Chatman, and against the defendants, Wren & Turner, Incorporated, and A. H. Phillips, Sheriff, in solido, in the full sum of Seven Hundred Five & 85/100 ($705.85) Dollars, with legal interest thereon from September 21, 1926, until paid, and all costs of this suit.

"Judgment rendered and signed in chambers by agreement of the parties hereto."

Counsel for appellee moved to amend the judgment by increasing the amount. Counsel for appellants argued that the judgment is excessive. The record does not warrant any change.

The judgment appealed from is affirmed, with all costs.